Filed 3/5/14  In re Katelyn R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re KATELYN R., a Person Coming Under the Juvenile Court Law. | B249096 |
| | (Los Angeles County Super. Ct. No. CK62926) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| DONALD R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Amy Pellman, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel for Plaintiff and Respondent.

Appellant Donald R. (father) appeals from the juvenile court's order denying him family reunification services with his daughter, Katelyn (born March 2006), pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(10).[1]  Father contends he was denied his statutory and due process right to notice of the recommendation by the Los Angeles County Department of Children and Family Services (the Department) that he be denied reunification services.  Father further contends he was denied the opportunity to be heard on that issue because the juvenile court erroneously denied his counsel's request for a continuance of the dispositional hearing at which father did not appear.  Finally, father argues the juvenile court erred by denying him reunification services.

We conclude that the lack of notice and denial of a continuance, while erroneous, was harmless, and that substantial evidence supports the denial of reunification services.  We therefore affirm the juvenile court's order.

**BACKGROUND**

On February 13, 2013, the Department filed a section 300 petition on behalf of Katelyn, alleging that father and Katelyn's mother, Laura D. (mother), had a history of substance abuse and were current abusers of alcohol, that the parents had a history of engaging in verbal and physical altercations in the child's presence, and that on November 3, 2012, the parents had failed to follow prior court orders and had engaged in a physical altercation in the child's presence.  The juvenile court authorized a removal order from the parents, and the Department took Katelyn into protective custody on February 8, 2013.

The family had a prior sustained petition in 2006 which found that mother's methamphetamine use and father's criminal history, including multiple convictions for inflicting corporal injury on a spouse or cohabitant, placed Katelyn at risk of harm. Father had failed to comply with his case plan and his family reunification services were terminated.  Mother successfully completed her case plan and was granted sole legal and

---

**1**      All further statutory references are to the Welfare and Institutions Code.

physical custody of Katelyn when the case was terminated on April 3, 2006. Father was accorded monitored visits.

At the time the instant case was initiated, mother, father, and Katelyn were living together in a converted garage at the maternal grandmother's home on Duffield Avenue in La Mirada. Father told the Department's social worker that he and mother had been in a relationship for eight years. He denied any criminal history, apart from a DUI in 1983 and a vehicle theft in 2006. Father denied any domestic violence in his relationship with mother. Mother also denied any domestic violence and any current drug use. Both parents agreed to drug test. Mother tested negative on January 2, 2013, but father did not submit to testing.

On January 10, 2013, the Sheriff's Department sent the Department a report that mother had requested law enforcement intervention in November 2012 because of domestic violence with father. Mother reported that father had hit her on the foot with a cable box and that she had suffered injuries. Mother told the responding deputies that there had been 12 previous incidents of domestic violence by father, but she had called law enforcement only a few times. The responding deputies observed mother's injuries, a damaged bedroom door, and the cable box on the floor, all of which were photographed. An emergency protective order was issued to mother against father on November 9, 2012.

At a team decision meeting on January 25, 2013, mother said she had moved out of the maternal grandmother's home because she thought she and father could no longer live together. On January 28, 2013, mother informed the Department's social worker that father had come to her new home and taken Katelyn from her. She asked for a protective order to keep father away from her home.

Both parents were present at the February 13, 2013 detention hearing at which the juvenile court found father to be Katelyn's presumed father. The juvenile court further found a prima facie case for detaining Katelyn from both parents. The court ordered both parents to provide their respective current mailing addresses and advised them that all future notices would be sent to those addresses. Father filed a notice of change of

3

mailing address listing his new address at Dalmatian Avenue in La Mirada, California. Both parents were present when the juvenile court scheduled a progress hearing for February 15, 2013, and an adjudication hearing for March 5, 2013. The court ordered the parties to return for the scheduled hearing dates without any further notice, order, or subpoena.

In a February 26, 2013 interim review report, the Department provided additional information on father's dependency court history. Father had two prior cases, one in Orange County, and one in Riverside County, involving three children and two different mothers. In the Orange County case, father's children Michael and Miranda were removed from father's custody and from the custody of the children's mother in March 1998 after the court found that the parents, while intoxicated, had engaged in a violent altercation in the presence of the children. Father failed to comply with his case plan, which included individual counseling for domestic violence. The case was terminated in August 1999 under a family law order granting the children's mother sole physical custody.

In the Riverside County case, Jarrid R. was removed from the custody of his mother, Shari W., after she was arrested for driving under the influence and felony child endangerment in 2007. Father's whereabouts remained unknown throughout the case, and he was accorded no family reunification services. The case was ultimately terminated under a family law order according Shari sole legal and physical custody of the child.

Based on father's dependency court history and his failure to reunify with Katelyn's half siblings Michael and Miranda, the Department recommended in a jurisdiction/disposition report received by the juvenile court on February 26, 2013, that no reunification services be provided to father pursuant to section 361.5, subdivision (b)(10).

Notice of the March 5, 2013 adjudication hearing was sent to father by certified mail at his previous Duffield Avenue address. The notice stated that at that hearing, the Department "may possibly recommend that no reunification services be offered" and that

4

"[t]his could result in the immediate referral of your child to a permanent plan and could also lead to your child being adopted." No notice was sent to father at his Dalmatian Avenue address, and the record contains no return receipt for the notice sent to father by certified mail at the Duffield Avenue address.

Father did not appear at the March 5, 2013 adjudication hearing. Mother pleaded no contest to an amended petition, and the juvenile court sustained the allegations that father and mother had a history of engaging in verbal and physical altercations in Katelyn's presence, that the parents had engaged in a physical altercation on November 3, 2012, and that such conduct placed the child at risk of harm. The court also sustained the allegations that both parents had a history of substance abuse and were current abusers of alcohol, rendering them incapable of providing regular care for the child.

The Department's counsel then advised the juvenile court that the Department was recommending no reunification services for father, pursuant to section 361.5, subdivision (b)(10). Father's counsel objected to the juvenile court's jurisdictional finding that Katelyn was at risk of serious physical harm as a result of father's inability to supervise the child. He conceded, however, that he had no evidence to present on father's behalf. Father's counsel then requested a 10-day continuance as to disposition, in light of the Department's recommendation that father be denied reunification services. The court asked father's counsel the basis for the 10-day continuance, and counsel responded: "Because if the Department's requesting the denial of F.R. services, then proceed for a 10-day continuance. I don't have the code section right in front of me." The juvenile court stated "I don't think you are correct, counsel" and denied the request for a continuance.

The juvenile court then asked the Department's counsel whether father had received notice of the recommendation that he be denied reunification services. The following colloquy ensued:

> "The Court [to the Department's counsel]: Did you give him notice?
> "[Department's counsel]: I believe that the report said it. The report that we received on [section 366].26 said no F.R. and what the basis was.

5

"The Court: Actually, we are here today for a contested dispo.

"[Department's counsel]: That was correct.

"[Father's counsel]: I will note my client's objection, still believe the code, Welfare and Institutions Code.

"The Court: You are correct, counsel, but he was given notice on that today. It was here for contested dispo. So my apologies, counsel. You are correct that he is entitled to a continuance, when appropriate. But you are on notice today that today was here for a contested dispo. Your client is not here. He was on notice that today was here for adjudication and contested dispo. And he's not here, and I don't believe there's any other evidence to present.

"[Father's counsel]: We don't have any evidence to present on his behalf, Your Honor, but I note his objection to terminate family reunification.

"The Court: Court notes the objection. Thank you."

The juvenile court then denied father reunification services under section 361.5, subdivision (b)(10) and accorded father weekly monitored visits for one hour. This appeal followed.

## DISCUSSION

### I. Notice regarding denial of reunification services and continuance of hearing

Section 361.5, subdivision (b)(10) provides that "[r]eunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence . . . [t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian of the child failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

6

When denial of reunification services under section 361.5 is an issue, subdivision (c) of that statute requires the juvenile court to hold a dispositional hearing on the issue and requires the Department to prepare a report as to whether reunification services should be provided: "In deciding whether to order reunification in any case in which this section applies, the court shall hold a dispositional hearing. The social worker shall prepare a report that discusses whether reunification services shall be provided." (§ 361.5, subd. (c).)

When the Department alleges that denial of reunification services under section 361.5 is appropriate, section 358, subdivision (a)(3) requires the Department to notify each parent of the content of section 361.5 and to inform the parents that if the juvenile court does not order reunification, a permanency planning hearing will be held at which parental rights may be terminated. Subdivision (a)(3) of section 358 also requires the juvenile court to continue the matter for a period not to exceed 30 days; it provides:

> "If the social worker is alleging that subdivision (b) of Section 361.5 is applicable, the court shall continue the proceedings for a period not to exceed 30 days. The social worker shall notify each parent of the content of subdivision (b) of Section 361.5 and shall inform each parent that if the court does not order reunification a permanency planning hearing will be held, and that his or her parental rights may be terminated within the timeframes specified by law."

The statutory framework requires both notice and an opportunity to be heard before reunification services may be denied. (*In re Jessica F.* (1991) 229 Cal.App.3d 769, 782 (*Jessica F.*).) Such notice is constitutionally mandated as well. "Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend. [Citation.]" (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114.)

Father contends he was denied his statutory and due process right to notice of the Department's recommendation that he be denied reunification services and that the juvenile court erred by denying his counsel's request for a continuance of the March 5,

2013 dispositional hearing. We agree that father had a statutory right under section 358, subdivision (a)(3) to notice of the recommendation to deny him reunification services and to a continuance of the dispositional hearing and that the juvenile court erred by denying the request for a continuance. We conclude, however, that under the applicable harmless error standard, father suffered no prejudice.

The California Supreme Court has stated that orders in juvenile dependency proceedings are subject to harmless error review: "The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) We have interpreted that language as permitting reversal only if the reviewing court finds it reasonably probable that the result would have been more favorable to the appealing party but for the error. (*People v. Watson* (1957) 46 Cal.2d 818, 836.) We believe it appropriate to apply the same test in dependency matters." (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60 (*Celine R.*).)

Father argues that the harmless error standard should not apply to the circumstances of this case, suggesting that the lack of notice and denial of a continuance constituted structural error that is reversible per se. As support for this argument, father cites *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535 (*Judith P.*) In that case, the Department first provided the mother's attorney with a status report recommending termination of reunification services on the morning of the section 366.21 hearing, in violation of the statutory requirement that the report be provided at least 10 calendar days before the hearing. The trial court denied a continuance to permit counsel to obtain documents to controvert facts discussed in the report, admitted the report, and followed the Department's recommendation to terminate reunification services. (*Judith P., supra*, at pp. 543-544.) The appellate court concluded that the Department's failure to timely provide the report was structural error, comparing the mother's due process rights to those accorded in criminal law cases.

We note that *Judith P.* predates the Supreme Court's harmless error analysis in *Celine R.* Moreover, the Supreme Court in *Celine R.* expressly rejected analogy to criminal cases as the basis for determining reversible error in juvenile dependency cases.

8

(*Celine R., supra*, 31 Cal.4th at p. 58 ["the analogy to criminal cases is inapt"].) The high court has since reaffirmed the principle that a harmless error analysis applies when reviewing juvenile dependency proceedings. In *In re James F.* (2008) 42 Cal.4th 901, the Supreme Court concluded that a juvenile court's error in appointing a guardian ad litem for a father without first explaining the capacity and powers of a guardian ad litem or allowing the father a meaningful opportunity to oppose the appointment was not grounds for reversing an order terminating parental rights. After noting that the father was never capable of resuming custody of his child, the court stated: "If the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required. [Citation.]" (*Id.* at p. 918.)

In the instant case, father has advanced no argument as to how he was prejudiced by the lack of notice of the Department's recommendation to deny him reunification services. Father does not dispute that he had actual notice of the contested adjudication hearing and that he failed to attend the hearing. At that hearing, father's counsel admitted that he had no evidence to present on father's behalf. Father has not identified, either in the juvenile court proceedings below or in this appeal, any evidence he would have offered had he been given notice of the Department's recommendation and the opportunity to attend a continued hearing. Given these circumstances, the lack of notice and denial of a continuance was harmless error. (*Celine R., supra*, 31 Cal.4th at pp. 59-60.)

## II. Denial of reunification services

There is ample support in the record that father failed to make reasonable efforts to address the problems that led to the removal of Katelyn's half siblings in a previous juvenile dependency case. Father does not dispute that his two older children were removed from him in an Orange County dependency case because of his substance abuse and domestic violence against the children's mother, that he was accorded services, and that he failed to reunify with the children. Father does not dispute the prior dependency court history involving Katelyn, the subject child in the instant case, nor does he challenge the juvenile court's jurisdictional findings in this case concerning his recurring

9

problems with substance abuse and domestic violence.  Substantial evidence supports the order denying father reunification services pursuant to section 361.5, subdivision (b).

## DISPOSITION

The order denying father reunification services is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

_____
\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.